1
2
3
4
5
6
7
8
9
10
11
12
13

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Bruce P. Murchison, an individual,       )
                                         )
                Plaintiff,               )
                                         )        CV 12-344 TUC DCB
v.                                       )
                                         )        **O R D E R**
Tucson Unified School District, a public )
entity,                                  )
                                         )
                Defendant,               )
_____)

14
15
16
17
18
19

          The Court denies the Plaintiff's request for oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument will not aid the court's decisional process which is based on a question of law. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

20
21
22
23
24
25
26

          On February 1, 2011, Plaintiff completed an Intake Application to Initiate Job Accommodation Review, which reflected he had moderate to severe narcolepsy. He reported difficulty in staying awake during the approximately 10 mile drive between his home and work at Catalina High School, and he requested the Defendant TUSD transfer him to a school closer to his home such as Santa Rita or Palo Verde high schools. Plaintiff asked that he be transferred to an administrative position because it would be more flexible, but agreed a teaching position would be acceptable.

27
28

          The Court finds that as a matter of law, the Defendant erred when it determined it was not required to accommodate the Plaintiff's need for a shorter commute to work. The Court finds that the Plaintiff has raised a material issue of fact as to whether he is a disabled person

within the meaning of the ADA.  The Defendant has raised a material issue of fact as to whether a transfer to a closer school or an administrative position would have been a reasonable accommodation which would have enabled the Plaintiff to perform the essential functions of his job.  The Court denies the crossmotions for summary judgment and sets the case for trial.

**1.    Standard of Review for Summary Judgment**

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to material fact." Fed.R.Civ.P. 56(a).[1]  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute that might effect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial.  *Id.* at 325.  Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case.  *Id.* If the moving party meets its burden, it then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest

---

[1]    When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, if any. Fed. R. Civ. P. 56(c).

upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Id.* at 252.

This trilogy of 1986 cases opened the door for the district courts to rely on summary judgment to weed out frivolous lawsuits and avoid wasteful trials. *Rand v. Rowland*, 154 F.3d 952, 956 -957 (9th Cir. 1998);10A Charles A Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 468 (1998). As explained in *Celotex*: "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**2.    Procedural Posture of the Case: Motion to Strike Exhibit Q**

On May 4, 2012, Plaintiff filed his Complaint against TUSD. On February 5, 2013, the Court granted Plaintiff leave to file a First Amended Complaint to add damages to reflect what he described as further action by Defendant. (Order (Doc. 20)). Defendant did not object to the amendment, but reserved the right to object to the damages being sought by the Plaintiff. (Response to Motion to Amend (Doc. 13)). After leave was granted, the Plaintiff failed to file the Amended Complaint so the Court will order it filed once more. In the event, the Plaintiff again fails to file it, the case will proceed on the original Complaint. On February 7, 2013, the Court issued a Scheduling Order setting the following case management deadlines: discovery deadline 6/7/2013, dispositive motions deadline 7/8/2013, and Joint Proposed Pretrial Order due 8/7/2013.

On June 9, 2013, Plaintiff filed a Motion to file a Second Amended Complaint to add an additional cause of action and to modify the claim for relief to increase the damages.  On August 7, 2013, the Court denied Plaintiff leave to file the Second Amended Complaint because the additional facts alleged in it were unnecessary to support the already adequately stated claims in the First Amended Complaint and the new claim of retaliation/harassment failed on the merits.  (Order (Doc. 47)).

The Court considered the retaliation claim, which was framed in terms of on-going harassment, and found it failed because Plaintiff did not allege any adverse employment action related to the alleged retaliatory act.  The Defendant did not deny the Plaintiff a second year of leave; the Assistant Superintendent's recommendation to the Board to deny the leave of absence was not followed by the Board, which instead granted him the leave.  The Plaintiff failed to allege either a protected activity or an adverse employment action.  (Order (Doc. 47) at 2-3.)  To the extent the Plaintiff's Motion for Summary Judgment, which was filed on July 11, 2013, before the Court's August 7, 2013, ruling, includes arguments relevant to claims of retaliation and harassment, it is denied.  The Court grants the Defendant's Motion to Strike those portions of Plaintiff's Motion for Summary Judgment referring to any cause of action for harassment and/or retaliation.

The Court noted that if evidence at trial supports a claim for emotional distress, such damages are compensatory under 42 U.S.C. § 1981a(b)(c), and amendment may be made to conform the complaint to the evidence, if necessary, after trial pursuant to Fed. R. Civ. P. 15(b)(1).  *Id.* at 3.  The Court denies Defendant's Motion for Summary Judgment to the extent it asserts Plaintiff can prove no damages.

Additionally, the Court noted: "In the event Plaintiff's case is challenged based on an omission of a fact disallowed now, the Court will allow Plaintiff to reurge the amendment."  *Id.* at 4.  For the first time in the proposed Second Amended Complaint, Plaintiff alleged his disability was moderate to severe narcolepsy with cataplexy.  (Proposed Second Amended Complaint (Doc. 34-1) ¶ 7.)  In the First Amended Complaint, Plaintiff alleged: moderate to

severe narcolepsy.  (First Amended Complaint (Doc. 12-1) at 1.)  In his Motion for Summary Judgment, Plaintiff asserts he is disabled due to  severe narcolepsy with cataplexy.

Currently pending before the Court is Defendant's Motion to Strike Exhibit Q to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment. (Motion to Strike (Doc. 52)).  Exhibit Q is Plaintiff's evidence supporting his assertion that he has been diagnosed with severe narcolepsy with cataplexy.  The Court reaffirms its decision to deny the Plaintiff leave to file the Second Amended Complaint and strikes Exhibit Q for the reasons stated below.

On August 16, 2013, Plaintiff's doctor made a "correction" to the record to reflect that the Plaintiff has narcolepsy with cataplexy.  The doctor explains that "initially" it was felt by the practitioners, that he had narcolepsy without cataplexy.  But as more symptoms became available it became obvious that he had narcolepsy with cataplexy."  (P's Reply (Doc. 50), Ex. Q.)  Unfortunately, the letter does not specify when the Plaintiff's medical records should be corrected to reflect the "cataplexy" diagnosis.  All of the evidence reflects that Plaintiff's diagnosis was, at all times relevant to this case, narcolepsy without cataplexy; this was the diagnosis reported: 1) on February 1, 2011, by the Plaintiff when he requested the accommodation, (P's MSJ, SOF, Ex. A: Intake Application for Accommodation); 2) on February 23, 2011, when Pima Lung & Sleep reported to Defendant the results of their sleep study, *id.* at Ex. B; 3) on April 23, 2012, when Plaintiff notified the Defendant he had received his right to sue letter related to his ADA claim with the EEOC, *id.* at Ex. M; 4) on May 4, 2012, when Plaintiff filed the original Complaint, (Doc. 1), and 5) on December 26, 2012, when he sought leave to file the First Amended Complaint, (Doc. 12).

The first mention of the narcolepsy with cataplexy diagnosis was on June 9, 2013, in Plaintiff's proposed Second Amended Complaint.  On July 8, 2013, in his Motion for Summary Judgement, Plaintiff wrongly asserted that: "Here, it is undisputed that Murchison was living with Narcolepsy with Cataplexy since at least 2009, prior to the unlawful employment practices subject to this lawsuit."  (P's MSJ (Doc. 43) at 6.)  As reflected by Defendant's Motion to Strike, this assertion is disputed.  Plaintiff offers Exhibit Q to his Reply, Dr. Puri's August 16,

2013, letter, as a clarification regarding some confusion in the medical record.  Plaintiff fails to point to any entry in the record prior to the August 16, 2013, letter to support his assertion that he was diagnosed with narcolepsy with cataplexy since at least 2009.  There is certainly no evidence to reflect the Defendant knew of any such diagnosis.  The record is to the contrary. *See* (Motion to Strike (Doc. 52), Exhibits 1-7.)  Dr. Puri's letter is not relevant to the time period of the Court's inquiry as to whether or not Defendant should have granted Plaintiff an accommodation of a transfer to a closer school because he was unable to safely drive from his home to Catalina High School.[2]

The Court grants the motion to strike Exhibit Q because it is not relevant to the inquiry before the Court.  As recognized by the Plaintiff, "[w]hether or not an individual meets the definition of a qualified individual with a disability is to be determined ***at the time*** of the adverse employment decision.  (P's Response to D's MSJ (Doc. 49) at 8 (citing *Bays v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000).  For this same reason, the Court rejects Defendant's argument of estoppel.  Defendant cannot estop Plaintiff from asserting he was a qualified individual when he requested the accommodation on February 1, 2011, based on an assertion made July 11, 2012, that he was totally unable to perform the job of teacher.  "[T]he Defendant blurs the timing of two separate events, asking for accommodations due to a disability with becoming unable to work due to a worsening of that disability." *Id.*  Defendant cannot preclude damages based on this assertion.

**3.    Americans With Disabilities Act (ADA): Reasonable Accommodation**

The ADA prohibits employers from discriminating against disabled individuals because of their disability. Plaintiff bears the burden to establish a prima facie case under the ADA by showing: (1) he is a disabled person within the meaning of the ADA, (2) he is able to perform the essential functions of the job with or without reasonable accommodation, and (3) the employer terminated him because of his disability. *Bates v. United Parcel Service,* Inc., 511 F.3d 974, 988 (9th Cir. 2007) (citing *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1246 (9th Cir. 1999); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996).  Discrimination

---

[2]  Additionally, Exhibit Q was not timely disclosed by the Plaintiff.

includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. §12112(b)(5)(A).

The Defendant's Motion for Summary Judgment fails because it erred when it concluded that, as a matter of law, no accommodation is required to assist a disabled employee in his commute to work: getting to the worksite is the responsibility of the employee.  (D's MSJ, SOF, Ex. 10: TUSD denial letter 4/8/2011.)  Defendant relies on *Regan v. Faureci*, 679 F.3d 475 (6th Cir. 2012), and other cases[3] relying on *Salmon v. Dade County School Board*, 4 F. Supp.2d 1157 (S. D. Fla. 1998).  In *Salmon*, a guidance counselor at a school asked to arrive at work late or be transferred to another school because the commute to her school aggravated her disability: chronic lumbosacral back strain.  The court found being on time and present at the school was an essential function of her job, but an employer is not required to provide reasonable accommodations to eliminate barriers which exist *outside* the work environment, only to accommodate barriers *in* the work environment.  *Id.* at 1163.  In *Regan*, the court assumed narcolepsy to be a qualifying disability, *Regan*, 679 F.3d at 479, but relying on *Salmon*, it found her employer was not required to accommodate her request for a modified work schedule to enable her to commute to work in lighter traffic, *id.* at 480.

In the Ninth Circuit, coming to work is an essential function of the job of a neonatal nurse and some other jobs, such as a teachers.  *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237-1239 (9th Cir. 2012).  In the Ninth Circuit, an employer has been required to consider reasonable accommodation for an employee suffering from obsessive compulsive disorder (OCD), who was fully capable of performing her job, but unable to commute in a timely fashion to work.  *Humphrey v. Memorial Hospitals Assoc.,* 239 F.3d 1128, 1134-36 (9th Cir. 2001).  The court found her inability to show up for work might be

---

[3]The court in *Regan* and Defendant rely on *Robinson v. Bodman*, 333 Fed. Appx. 205 (9th Cir. 2009), an unpublished opinion which relied on *Salmon*.  Citation to *Robinson* is provided for under FRAP 32.1, and has no precedential value, here.  Ninth Circuit Rule 36-3.

accommodated by a leave of absence for medical treatment to improve her OCD condition or by a work-at-home position, if the essential functions of her position could be done at home and a work-at-home position would not cause undue hardship for the employer. *Id.* at 1136.

In *Buckingham v. United States*, 998 F.2d 735, (9th Cir. 1993), the United States Postal Service was required to transfer an employee from Columbus, Mississippi, to Los Angeles, California, so he could receive better treatment for AIDS, which was unavailable to him in Mississippi.   Like the Plaintiff, here, the plaintiff in *Buckingham* was fully capable of performing his job.  In the Ninth Circuit, "the Act's requirement of reasonable accommodation is not limited to an employee's ability to function on the job and reaches employees who are able to perform the essential functions of their job, but may require reasonable accommodation to allow them to enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees or pursue therapy or treatment for their handicaps. *Id.* at 740-741.

According to the record as asserted by the Defendant, its Human Resource representative, Ms. McCaskill, interacted with the Plaintiff by personally meeting with him related to his filing the application for an accommodation, obtaining a letter from Plaintiff's doctor regarding Plaintiff's disability, reviewing the information contained therein and concluding the Plaintiff suffered from a sleep disorder which did not affect his ability to perform the essential job functions of a teacher.  With advise of counsel, she determined that as a matter of law, Defendant was not required to provide an accommodation to enable the Plaintiff to commute to work, and, accordingly, denied the request.  (D's MSJ, SOF (Doc. 42), Ex. 10: McCaskill letter 8/8/2011; Ex. 13: McCaskill Affidavit); (D's Response to P's MSJ (Doc. 48), Ex. 14: McCaskill 2nd Affidavit).

By Defendant's own admission, the interactive accommodation process ended when the Defendant concluded it was not required to accommodate Plaintiff related to impediments found *outside* the work environment.

Under the ADA, an employer is required to engage in an interactive process with an employee to determine the appropriate reasonable accommodation *Zivkovic v. S. Al. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).  This requires: 1) direct communication between the

employer and employee to explore in good faith possible accommodations; 2) consideration of the employee's request; and 3) offering an accommodation that is reasonable and effective. *Id.*

The duty to accommodate is ongoing; it is triggered by the employee's request for an accommodation and continues when the employee asks for a different accommodation or where the employer becomes aware that the initial accommodation is failing and further accommodation is needed. *Humphrey*, 239 F.3d at 1138.

In *Humphreys,* the Ninth Circuit held that once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in the interactive process with the employee to identify and implement appropriate reasonable accommodations. 239 F .3d 1128, 1137 (9th Cir.2001). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Id.* "Employers, who fail to engage in the interactive process in good faith, face liability . . . if a reasonable accommodation would have been possible." *Id.* The duty to accommodate "is a continuing duty that is not exhausted by one effort." *Id.* (citations omitted).

Here, no such interactive process occurred because the Defendant concluded, as a matter of law that no accommodation was required. If Defendant had been correct, then as a matter of law it, likewise, was excused from engaging in an interactive process to explore possible accommodations. But, Defendant was wrong regarding its duty to accommodate, and likewise, erred when it failed to engage in an interactive process to determine whether a reasonable accommodation was available to enable the Plaintiff to perform the essential functions of his job, including commuting to work.

Defendant is liable for violating the ADA if Plaintiff is disabled within the meaning of the ADA, unless the accommodation requested by the Plaintiff was an undue hardship, 29 C.F.R. § 1630.2(o) (2009), or there was no effective accommodation which would have enabled him to perform the essential functions of his job.  "Reasonable accommodation" is ordinarily a question of fact to be decided by the jury. *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010); *Fuller v.* Frank, 916 F.2d 558, 562 n. 6 (9th Cir. 1990); *Reynolds v.*

*Brock*, 815 F.2d 571, 575 (9th Cir. 1987).  Whether a particular accommodation is reasonable depends on the individual circumstances of each case and requires fact-specific, individualized findings regarding the circumstances faced by the disabled individual and the accommodations necessary to meet the program's standards.  *Vincson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).

While both parties, Plaintiff by his requested accommodation and Defendant's by their response, treated the Plaintiff as being able to perform the essential functions of his job as a teacher, the Plaintiff noted additional problems such as struggling to stay awake during class unless he remained active, i.e., lecturing, and side effects from medication.  Plaintiff explained he needed the requested accommodation of a transfer to a closer school because he risked falling asleep driving back and forth to school due to his narcolepsy, but preferred a transfer to an administrative position rather than a teaching position because an administrative position offered more flexibility.

The record reflects that the Plaintiff applied for 20 positions, only one of which was a teaching position and only about six were closer to his home.   (D's MSJ, SOF, Ex. 11.)  Only two positions were substantially closer.  He sought a teaching position and an assistant principal position at Palo Verde High School, which was 3.9 miles from his home.  He sought an assistant principal position at Secrist Middle School, which was 5.3 miles away.  *Id.*  Reassignment of staff, for any reason, to Palo Verde High School or Rincon High School, was not an option because it was under a three-year "Turn-Around mandate."  *Id.* at Ex. 10: TUSD denial letter 4/8/2011.

The Defendant submits affidavits that reflect an administrative job is not more flexible than a teaching position and requires driving during the school day.  An administrator is required to arrive at school one hour before school starts and remain there between one to seven hours after school ends.  Administrators must supervise all extra curricular events, which usually occur at night, including traveling as far as Phoenix or out of town to attend away football games and other events attended by students. Administrators work more hours per day, week or month than a teacher, and there is an enormous amount of paper work required, more

than required by a teacher, with most of it being done after school, at night or on weekends. Administrators must drive both during and after the school day, to attend meetings at TUSD headquarters or at other schools at least once a month.  *Id.* at Exs. 6-8.

While Plaintiff survives Defendant's motion for summary judgment, he does not prevail on his crossmotion for summary judgment.  It remains for the jury to determine whether the Plaintiff was capable of performing his job as a teacher with or without a reasonable accommodation.  Plaintiff bears the burden to prove this element of his ADA case by establishing the existence of a specific reasonable accommodations that the employer failed to provide.  *Memmer v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999).  To prevail on his claim that the Defendant failed to engage in the interactive process: "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred."  *Scotch v. Art Inst. of Cal.– Orange County, Inc.*, 173 Cal.App.4th 986, 1018 (Calif. App. 2009).  Under the ADA, an employer is not liable for failing to engage in the interactive process in good faith if a reasonable accommodation was not possible.  *Barnett v. U. S. Air, Inc.*, 228 F.3d 1105, 1117 (9th Cir. 2000) (*en banc*), *vacated on other grounds*, *U. S. Air v. Barnett*, 535 U.S. 391 (2002).  Where the employer failed to engage in the interactive process in good faith, the burden to show no available reasonable accommodation is on it.  *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256 (9th Cir. 2001), *overruled on other grounds*, *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974 (9th Cir. 2007).  "The question of whether this failure should be excused because there would in any event have been no reasonable accommodation available is one as to which the employer, not the employee, should bear the burden of persuasion throughout the litigation."  *Id.*

The employer, TUSD, must demonstrate either that no reasonable accommodation was available to cure the performance deficiency or that such reasonable accommodation posed an undue hardship on the employer.  *Bates,* 511 F.3d at 996-997; *Humphreys*, 239 F.3d at 1137.

**4.     Disabled Within the Meaning of the ADA**

"Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 193 (2002) (quoting 42 U.S.C.

§ 12102(2)(A)).  Under the ADA "disability" is defined as follows: "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Id.* (quoting 42 U.S.C. § 12102(2)).

Plaintiff argues that the Defendant regarded him as having "a long-term or permanent physical impairment that substantially limits or impairs a certain major life activity covered by the ADA; specifically staying awake (not driving limited by sleepiness . . ..)  Under the "regarded as" prong of the definition of disability, an individual must "establish that he or she has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.. 12102(3)(A) (2009).  Congress intended the "regarded as" definition to protect people from a range of discriminatory actions that are based on myths, fears and stereotypes about disability, i.e., misperceptions, which occur regardless of whether the individual has a substantially limiting impairment.  *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999); *Mastio v. Wausau Service Corp.*, 948 F. Sup. 1396, 1415 (E.D. Mo. 1996).  There is no duty to accommodate a person who is only "regarded as" disabled.  *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003).

Whether or not Defendant regarded Plaintiff as disabled does not assist the Plaintiff because Plaintiff does not accuse Defendant of discriminatory conduct beyond failing to accommodate his disability: narcolepsy. Plaintiff must establish that he is a disabled person within the meaning of the ADA by being an individual with a physical or mental impairment that substantially limits one or more major life activities.

Both parties refer the Court to cases which support their assertions that, as a matter of law, narcolepsy, with or without cataplexy, does or does not substantially impair the major life activity: sleeping.[4]  "Major life activities include, but are not limited to, caring for oneself,

_____

[4]The Plaintiff relies on social security cases, which as Defendant points out apply a different standard and do not assist him here.  Under the Social Security Act, epilepsy is considered a listed disability depending on the degree of impairment as determined according to type, frequency, duration, and sequelae of seizures. Appendix 1 to Subpart P of Part 404– Listing of

performing manual tasks, seeing, hearing, eating, <u>sleeping</u>, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 1202(2)(A); 29 C.F.R. 1630.2(i) (emphasis added). Narcolepsy, like epilepsy,[5] is a type of impairment "whose symptoms vary widely from person to person, which makes an individualized assessment particularly necessary. *Cf. Toyota Motor Mfg., 534 U.S. at 691-692 (describing this to be the case for carpel tunnel syndrome). In such situations, it is insufficient to prove disability status by merely submitting evidence of a medical diagnosis of an impairment; instead, there must be evidence that the extent of the limitation caused by the impairment is substantial in terms of the person's own experience. *Id.*

There is no statutory definition of "substantiality," but in the Ninth Circuit, the analysis of "substantially" correlates to its EEOC definition, *Fraser v. Goodale,* 342 F.3d 1032, 1040 (9th Cir. 2003), which was revised subsequent to the amendment of the ADA by Congress in 2009: 29 C.F.R. § 1630.2(j).  The ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, expanded the scope of the term "disability" in the ADA.  *Rohr v. Salt River Project Agricultural, Improvement and Power District*, 555 F.3d 850, 853 (9th Cir. 2009). Congress rejected the Supreme Court's interpretation of the term "disability" in *Sutton,* 527 U.S. 471, and *Toyota,* 534 U.S. 184, and by the ADAAA expanded the class of individuals who are entitled to protection under the ADA. *Id.* According to Congress, as a result of these Supreme Court cases, "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities." *Id.*  Congress acted by adopting the ADAAA to implement what it had intended under the ADA, which was an Act providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and provide *broad* coverage." *Id.*

---

Impairments §§ 11.00, 11.02, 11.03.

[5]*See* n. 4.

The ADAAA calls for the broad construction of "disability" and for coverage to apply to the "maximum extent" permitted by the ADA and the ADAAA. *Id.* at 861. The ADAAA clarifies Congress' intent with respect to the term "disability" in <u>three</u> major ways that could affect whether ADA protections are extended to the Plaintiff. First, the law makes clear that sleeping is a major life activity under the Act. *See* 29 C.F.R. § 1630.2(i)(1)(i). Second, the ADAAA states that the standard articulated in *Toyota*– that "substantially limits" means "prevents or severely restricts"-"has created an inappropriately high level of limitation necessary to obtain coverage under the ADA." 42 U.S.C. § 12101(a)(3)-(8); *Rohr*, 555 F.3d at 861 (citing Pub. L. No. 110-325, 122 Stat. 3553, 3554 (2008)). Third, the ADAAA explicitly rejects the requirement, pursuant to *Sutton*, that whether an impairment substantially limits a major life activity is to be determined with reference to mitigating measures. *Id.* The Court must make the "substantially limits" inquiry "without regard to the ameliorative effects of mitigating measures such as ... medication, medical supplies, equipment, or appliances . . .; use of assistive technology; reasonable accommodations or auxiliary aids or services; or learned behavioral or adaptive neurological modifications. *Id.* n. 9.[6] The Court must, however, consider the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with treatment. 29 C.F.R. § 1630.2(j)(4)(ii).

Most dramatically, there are now "predictable assessments" for recognized "types of impairments that will, at a minimum, substantially limit certain major life activities, such as deafness will substantially limit hearing; blindness substantially limit seeing, . . ., [and] epilepsy substantially limits neurological function. *Id.* at (3)(ii). To the extent narcolepsy is like epilepsy, it might well substantially limit the major life activity of sleeping. Gone is the requirement that a person be "significantly restricted" as to the condition, manner or duration under which he can perform a particular major life activity; instead, the Court compares the condition and manner of the individual's performance of the major life activity to most people in the general population and considers the difficulty, effort, or time required to perform the

---

[6]The exception being mitigation from ordinary eyeglasses or contact lenses

major life activity, including any pain experienced or negative side effects of mitigating measures such as medication or treatment regimen. *Id.* at(4)(i)(ii).

As for impairments not expressly identified as substantial, such as narcolepsy, "an impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the population. It need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability . . ." *Id.* at (1)(ii). The determination still requires an individualized assessment, but "substantially limits" shall NOT require the degree of functional limitation previously required under the ADA, prior to the ADAAA. *Id.* at (1)(iv).

The focus of an ADA case "should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis," *Id.* at (1)(iii), nor does it require scientific, medical or statistical analysis, *id.* at (1)(v).

Whether or not an impairment substantially limits a major life activity is a question of fact that requires a sensitive, fact-based analysis. *Fraser v. Goodale,* 342 F.3d 1032, 1039 (9th Cir. 2003). To survive summary judgment, Plaintiff need only raise an issue of fact as to whether his narcolepsy substantially impaired the major life activity of sleeping.

Here, on February 1, 2011, Plaintiff completed an Intake Application to Initiate Job Accommodation Review, which said he had moderate to severe narcolepsy. He reported he had been having symptoms more often and more severe, including many near accidents. "Given the driving distance from [his] home to Catalina," he requested a transfer to a closer school such as Santa Rita, which was in walking distance, or Palo Verde High School. In explanation for how it affected his ability to work, he wrote: "The main problem is getting to and from work. Long periods of stillness encourage the onset. As long as I remain active in class, I tend to do ok. There have been times, however, where I have struggled to stay awake during class." (P's SOF (Doc. 43-1), Ex. A.) On February 9, 2011, he was seen at the Pima Lung & Sleep Center.

The Sleep Center, Dr. Haloftis, D.O., confirmed the narcolepsy <u>without</u> cataplexy diagnoses. He explained the disorder caused the Plaintiff to become profoundly sleepy. The doctor noted that Plaintiff had reported becoming excessively sleepy when driving to and from work, but fortunately had not had a motor vehicle accident. According to the doctor, it would be in Plaintiff's best interest to be transferred to a school closer to his home where he might only need to drive a short distance to get back and forth to work or even be able to walk to work. *Id.* Ex. B.

Driving is not a qualifying major life activity. *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635 (2nd Cir. 1998); *Chenowith v. Hillsborough County*, 250 F.3d 1328 (11th Cir. 2001); *Winsley v. Cook County,* 563 F.3d 598 (7th Cir. 2009). But Plaintiff's inability to drive is evidence that his impairment from narcolepsy substantially limited the major life activity of sleeping. Most people do not fall asleep during a 20 minute drive of approximately 10 miles. Plaintiff proffers sufficient evidence to raise a material issue of fact regarding whether he is disabled within the meaning of the ADA. The Court finds a material question of fact exists as to whether the Plaintiff is a disabled person for purposes of the ADA.

Plaintiff does not, however, prevail on summary judgment on the question of disability. A general time line reflects that the Plaintiff had been a teacher in the district since 1992. Plaintiff was discharged from the National Guard in 2009 after being diagnosed with narcolepsy. (P's SOF 7.) He was first treated in 2010 for narcolepsy and chronic fatigue. (D's MSJ, SOF, Ex. 4: Long Term Disability Claim.) In June 2010, Plaintiff completed post-graduate work on a Masters in Education. (D's MSJ, SOF, Ex. 4: Long Term Disability Claim.) He requested the accommodation in February of the 2010-2011school year. *Id.* at Ex. 2: Intake Application for Accommodation.) At that time, his supervisor, Principal Scott, completed part B of the intake form, noting that he had done nothing to assist the Plaintiff in performing the functions of his job because the matter had only just been brought to his attention, and the Plaintiff did a good job as a teacher. "His problem is related to a medical condition that makes driving a hardship." (D's SOF (Doc. 42), Ex. 2.) Plaintiff acknowledges that prior to

2011/2012, he received above average and outstanding ratings in his performance evaluations. (P's SOF 4.)

Plaintiff alleges that the following school year, 2011-2012, his condition became worse and he began having problems focusing and losing his train of thought during lectures. (P's MSJ, SOF, Ex. P: Murchison Affidavit at 3.) His medication caused side affects, such as agitation and severe headaches. *Id.*; (D's MSJ, SOF, Ex. 2: Intake Application for Accommodation). He filed for long term disability benefits on July 11, 2012, (D's MSJ, SOF, Ex. 4: Long Term Disability Claim.), wherein he reported that he became unable to work May 2, 2012. He reported his condition had worsened to a point where he was not sure the request to be transferred to a closer school would accommodate his disability and might not be able to return to work or might need a modified work schedule. *Id.* He was, nevertheless, engaged in "retraining" by taking paralegal courses at Pima Community College and had been accepted to Phoenix School of Law, *Id.*; (P's MSJ, SOF, Ex. M: Murchison letter dated 4/23/2012). Since May 2012, the Plaintiff has been on a medical leave of absence from teaching for Defendant. (P's MSJ, SOF, Ex. P. Murchison Affidavit at 4); (P's MSJ, SOF, Ex. H: Murchison letter.)

At the time of trial, the jury will determine if the Plaintiff was a disabled person for the purpose of invoking liability under the ADA.

**5.    Damages**

Defendant asserts the Plaintiff fails to present any evidence of damages. He was paid wages for the 2011-2012 school year, and has been on a leave of absence and in law school since then. He filed a claim for disability benefits, asserting total inability to work in July 2012, which Defendant argues is an admission that he was unable to perform the essential functions of his job with or without any accommodation. Plaintiff responds that he has suffered both pecuniary and non-pecuniary damages, which he can prove at trial. In his First Amended Complaint, he seeks damages in the sum of $189,000, the cost for retraining: law school. He also seeks the cost of lost benefits for three years. Both amounts would not have been incurred, if Defendant had provided an accommodation to enable him to keep working, instead of taking a leave of absence after the end of the 2011-2012 school year and pursuing a new career in law.

He also seeks damages for emotional distress and punitive damages, but failed to include these claims in his First Amended Complaint. If evidence at trial supports a claim for emotional distress, such damages are compensatory under 42 U.S.C. § 1981a(b)(c), and the Court shall allow Plaintiff leave to reurge his amendment.

Without any citation to supporting case law, Defendant asserts that the compensatory damages sought by Plaintiff are not available, pursuant to 42 U.S.C. § 1981a(a)(2) and (3), because it acted in good faith in handling Plaintiff's request for accommodation. Defendant relies on subsection 3, which provides: "in cases where a discriminatory practice involves the provision of a reasonable accommodation, . . . , [compensatory] damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business." The Court having found the Defendant failed to engage in the interactive process to identify and make a reasonable accommodation, the Court finds this subsection does not preclude the damages sought by the Plaintiff.

### Conclusion

The Court finds the Defendant erred when it concluded as a matter of law it was not required to accommodate the Plaintiff in his commute to work. The Court finds material questions of fact exist which preclude summary judgment being granted for either party. At trial, the jury must determine if the Plaintiff was a qualified disabled person for the purpose of invoking liability under the ADA.

**Accordingly,**

**IT IS ORDERED** that within five days of the filing date of this Order, the Plaintiff shall file his First Amended Complaint with the Clerk of the Court. In the event the Plaintiff fails to file the First Amended Complaint, the case shall proceed on Plaintiff's original Complaint.

**IT IS FURTHER ORDERED** that the Motion to Strike portions of Plaintiff's Motion for Summary Judgment that refer to any cause of action for harassment and/or retaliation (Doc. 44) is GRANTED.

**IT IS FURTHER ORDERED** that the Motion to Strike Exhibit Q (Doc. 52) is GRANTED, and Exhibit Q to Plaintiff's Reply (Doc. 50) is STRICKEN.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment or in the Alternative for Partial Summary Judgment (Doc. 41) is DENIED.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. 43) is DENIED.

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order, the parties shall file the Joint Pretrial Order, and, thereafter, the Court shall set a pretrial conference in this matter.

DATED this 3rd day of March, 2014.


David C. Bury
United States District Judge